CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 16 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| SANDRA K. DAVIS, | ) | |
| | ) | Civil Action No. 5:07CV00092 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | By:   Hon. Glen E. Conrad |
| | ) |        United States District Judge |
| Defendant. | ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social

Security denying plaintiff's claims for disability insurance benefits and supplemental security income

benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. §

1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C.

§ 1383(c)(3). This court's review is limited to a determination as to whether there is substantial

evidence to support the Commissioner's conclusion that plaintiff was not under a disability within the

meaning of the Act. If such substantial evidence exists, the final decision of the Commissioner must

be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence

has been defined as such relevant evidence, considering the record as a whole, as might be found

adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400

(1971).

The plaintiff, Sandra K. Davis, was born on December 14, 1954, and eventually reached the

ninth grade in school. Sometime later, Mrs. Davis earned a general equivalency diploma. Plaintiff

has worked as a florist, store clerk, cabinet refinisher, and factory assembler. Mrs. Davis last engaged

in work activity in 2004. On October 20, 2004, plaintiff filed applications for disability insurance

benefits and supplemental security income benefits. Plaintiff alleged that she became disabled for

all forms of substantial gainful employment on January 1, 2000 because of back problems and

depression. Mrs. Davis now maintains that she has remained disabled to the present time. The

Commissioner determined that plaintiff met the insured status requirements of the Act through the

third quarter of 2000, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Based on the

Commissioner's finding as to plaintiff's date last insured, Mrs. Davis is entitled to disability insurance

benefits only if she has established that she became disabled for all forms of substantial gainful

employment on or before September 30, 2000. See gen., 42 U.S.C. § 423.

Plaintiff's claims were denied upon initial consideration and reconsideration. She then

requested and received a de novo hearing and review before an Administrative Law Judge. In an

opinion dated September 11, 2006, the Law Judge found that Mrs. Davis was disabled for purposes

of her application for supplemental security income benefits as of October 20, 2004, the date of her

application for such benefits.[1] However, the Law Judge ruled that plaintiff was not entitled to

disability insurance benefits. More specifically, the Law Judge determined that Mrs. Davis remained

engaged in the performance of substantial gainful activity through her date last insured, September

30, 2000. Accordingly, the Law Judge ultimately concluded that plaintiff was not disabled for

purposes of her application for disability insurance benefits at any time during the period in which

she still enjoyed insured status, and that she was not entitled to disability insurance benefits. See 20

---

[1] Under the supplemental security income benefit program, a claimant cannot receive benefits until the month
following the month of application for such benefits, regardless of the month in which the claimant became disabled.
See 20 C.F.R. §§ 416.202 and 416.501

2

C.F.R. § 404.1520(b). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Davis then appealed to this court.

On appeal, plaintiff submitted additional evidence.[2] The new evidence consisted of tax papers and affidavits from persons who worked with Mrs. Davis during the early 2000s. Mrs. Davis argued that the tax records and the affidavits submitted from former co-workers, friends, and family established that she did not engage in regular work activity at any time following the termination of her insured status.

By memorandum opinion and order entered May 28, 2008, the court remanded the case to the Commissioner for consideration of the additional evidence. Referring to caselaw from the United States Court of Appeals for the Fourth Circuit, the court noted that gross sales, standing alone, do not evince performance of substantial gainful activity. The court also observed that affidavits from those familiar with the quality and substance of a claimant's work should be considered in assessing performance of substantial gainful activity.

On remand from this court, the Social Security Administration's Appeals Council remanded the case to the same Administrative Law Judge. The Law Judge scheduled a supplemental administrative hearing and undertook a de novo review.[3] At the supplemental administrative hearing,

---

[2] In submitting evidence for the court's consideration, plaintiff's attorney indicated that the same evidence had been submitted to the Social Security Administration's Appeals Council. However, the new evidence was not included in the administrative record, and presumably was not considered by the Appeals Council.

[3] Mrs. Davis now maintains that the Law Judge erred in conducting a de novo review, and that the Law Judge should have limited consideration of the case to the issue of plaintiff's continuing performance of substantial gainful activity, as outlined in the court's opinion of May 28, 2008. However, the order of the Appeals Council remanding the case to the Administrative Law Judge clearly provided that the earlier decision was vacated in its entirety. (Supp. TR 68). When a case is remanded to the Commissioner for further consideration, the Social Security Administration's Appeals Council decides whether to make a decision, or to remand the case to the Administrative Law Judge with instructions. See 20 C.F.R. § 404.983. If the case is remanded to a Law Judge, the Law Judge may consider any issues

the Law Judge received testimony from plaintiff and her husband, as well as from a medical expert and vocational expert. The Law Judge produced a second opinion on June 26, 2009, which now stands as the final decision of the Commissioner. The Law Judge once again denied plaintiff's entitlement to a period of disability and disability insurance benefits. Moreover, in the second opinion, the Law Judge also determined that Mrs. Davis is not entitled to supplemental security income benefits.

The Law Judge again found that Mrs. Davis engaged in substantial gainful activity, at least until early 2004. The Law Judge noted that during the early 2000s, Mrs. Davis operated a florist business. The Law Judge considered all of the available sources of evidence, including the evidence which was submitted to the court following the earlier administrative decision, in concluding that plaintiff's work activity at the florist shop was of such quality and regularity as to constitute substantial gainful activity. The Law Judge again concluded that plaintiff engaged in substantial gainful activity through the termination of her insured status on September 30, 2000.

In his second opinion, the Law Judge also undertook a much more detailed evaluation of the medical record. The Law Judge determined that, prior to the termination of her insured status, Mrs. Davis did not suffer from any severe impairments. However, the Law Judge ruled that, at the time of her application for supplemental security income benefits on October 20, 2004, plaintiff experienced severe impairments, including degenerative disc disease and fibromyalgia, as well as several non-severe impairments including depressive disorder, stress incontinence, status post carpal tunnel release, and recent onset glaucoma. The Law Judge recognized that, in his earlier opinion, he

related to the underlying claims. Id.

had relied on a medical assessment from Dr. Abigail Dennis, a treating family physician, in determining that plaintiff's musculoskeletal problems were so severe as of the date of her application for supplemental security income benefits as to render her incapable of sitting or standing for sufficient periods of time as would be necessary for the performance of either sedentary or light work activity. It was on the basis of Dr. Dennis' evaluation that the Law Judge previously determined that Mrs. Davis was disabled for purposes of her application for supplemental security income benefits. However, in his second opinion, the Law Judge cited the testimony of the medical expert, Dr. Ronald E. Kendrick, a board certified orthopaedic surgeon, in determining that plaintiff's back problems, as well as her related pain and physical difficulties, did not become so severe as to prevent performance of sedentary levels of work activity. Simply stated, given the objective medical studies, as well as plaintiff's medical history, the Law Judge found that Dr. Kendrick's assessment of plaintiff's residual functional capacity was more reliable than that of Dr. Dennis. Based on the residual functional capacity for sedentary exertion as found by Dr. Kendrick, and given plaintiff's age, education, and prior work experience, as well as the testimony of the vocational expert, the Law Judge ultimately concluded that Mrs. Davis retained the capacity to perform several specific sedentary work roles existing in significant number in the national economy at all relevant times on and after October 20, 2004.

In summary, given his finding that Mrs. Davis was engaged in substantial gainful activity after the date last insured, and the alternative finding that plaintiff did not experience any severe medical impairments on or before September 30, 2000, the Law Judge ruled that Mrs. Davis was not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(b) and (c). Given

his finding that plaintiff retained sufficient functional capacity to engage in several specific sedentary work roles as of the date of her application for supplemental security income benefits, the Law Judge also ruled that Mrs. Davis was not disabled for purposes of the claim for such benefits. See 20 C.F.R. § 416.920(g).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Stated succinctly, the court believes that the medical record supports the Law Judge's finding that Mrs. Davis' back problems and related difficulties did not prevent the performance of all forms of substantial gainful employment at any time prior to the Commissioner's most recent final decision.[4]

As outlined above, the critical issue in this case is whether the medical record now supports the Law Judge's rejection of Dr. Dennis' finding of total disability. Dr. Dennis saw Mrs. Davis with some regularity at the University of Virginia Family Medicine Clinic beginning in 2004 or 2005. Indeed, the record reflects that Mrs. Davis received thorough diagnostic work-ups at the clinic in 2005. The court notes that the Administrative Law Judge summarized the clinical notes from each of plaintiff's medical visits in detail, and the court believes that the Law Judge's summaries are fair and accurate.

On February 28, 2006, Dr. Dennis completed a residual functional capacity assessment. As previously noted, in his first opinion, the Administrative Law Judge relied on this assessment in determining that Mrs. Davis had become disabled for all forms of work activity as of the date of her application for supplemental security income benefits. In this assessment, Dr. Dennis reported that

---

[4] Inasmuch as the court has found substantial evidence to support the Commissioner's resolution of all the medical issues, the court finds it unnecessary to consider whether the evidence supports the Law Judge's finding that plaintiff engaged in substantial gainful work activity after her date last insured.

plaintiff had been seen at the Family Medicine Clinic for several years, and that she had been Mrs. Davis' primary physician since September of 2005. (TR 349). Dr. Dennis offered a diagnosis of degenerative joint disease of the cervical and lumbar spine. (TR 349). Dr. Dennis reported that plaintiff suffers from severe chronic pain in her neck and back, especially upon prolonged sitting or standing. (TR 349). By way of clinical findings, the doctor noted significant tenderness to palpation over the cervical and lumbar spine with associated spasm of the paraspinal muscles and intermittent positive straight leg raising on the left. (TR 349). Dr. Dennis indicated that depression contributes to the severity of plaintiff's symptoms. (TR 350). She related that plaintiff's attention and concentration are constantly affected by her pain. (TR 350). Dr. Dennis produced specific findings as to plaintiff's capacity for work-related activities which indicate residual functional capacity for much less than a full range of sedentary exertion. (TR 350-52). Without question, Dr. Dennis' report of February 28, 2006 weighs in favor of a finding of total disability.

The court recognizes the well-established rule that reports and opinions from treating physicians, such as Dr. Dennis, are generally entitled to greater weight, given the unique perspective gained in ministering to the claimant over a period of time. See 20 C.F.R. §§ 404.1527(d)(2)(i) and 416.927(d)(2)(i). See also, Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, while evidence from a treating physician must be accorded greater weight than that of others, such evidence need not be controlling. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Rather, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.

7

Given the more recent development of the medical record in the instant case, the court believes that there is substantial evidence to support the Law Judge's finding that Dr. Dennis' report is not entitled to controlling weight. As previously noted, in considering the case following remand, the Commissioner secured testimony from a medical expert, Dr. Ronald Kendrick. Dr. Kendrick is a board certified orthopaedic surgeon. (Supp. TR 203). Dr. Kendrick reviewed all the medical records in plaintiff's case. (Supp. TR 307). Based on the objective evidence, the expert testified that Mrs. Davis suffers from degenerative disc disease and spondylosis in the lumbar region with minor disc protrusion, but without any clinically significant stenosis. (Supp. TR 308). He also noted that she has similar problems in the cervical spine, with questionable stenosis on the right side. (Supp. TR 309). The expert also related that Mrs. Davis has questionable fibromyalgia. (Supp. TR 311). Dr. Kendrick testified that plaintiff's physical problems definitely limit her ability to function in a work setting. (Supp. TR 311). Because of the pain associated with her musculoskeletal impairments, Dr. Kendrick felt that Mrs. Davis is limited to sedentary work, with certain other postural limitations. (Supp. TR 311-13). According to Dr. Kendrick, plaintiff could be expected to stand and walk for about two hours in an eight hour day and sit for about six hours. (Supp. TR 313). Dr. Kendrick specifically testified that he disagreed with Dr. Dennis' physical findings. (Supp. TR 316).

The court notes that Dr. Kendrick's opinions find support in a medical examination and report submitted by Dr. William Humphries on January 21, 2005. Dr. Humphries saw Mrs. Davis at the behest of Disability Determination Services. At that time, plaintiff complained of severe and debilitating pain. Dr. Humphries listed physical findings as follows:

NECK: Her neck range of motion is moderately reduced. There is no JVD or bruit. There are mild tenderness to palpation on the base of the posterior cervical spine and medial trapezius muscles bilaterally with left being worse than right. No JVD or bruit.

BACK: Back range of motion is slightly reduced without kyphoscoliosis or paravertebral muscle spasm, but there is tenderness to palpation of the entire paraspinous musculature including the lumbar region and the proximal gluteus muscles bilaterally. The straight leg raise is negative in lying or sitting bilaterally at 90 degrees.

EXTREMITIES: Joint range of motion of the upper extremities is full without tenderness, heat, swelling or deformity except slightly reduced shoulder motion due to pain in the cervical spine that is on the right side, and there is some mild synovial thickening of some of the IP joints of fingers of each hand. Lower extremity joint range of motion is full without tenderness, heat, swelling or deformity except there are some moderate low back pain elicited on extremes of motion of both hips. There is a beginning of mild bunion formation at the first metatarsophalangeal region of his [sic] both feet.

NEUROLOGICAL: Coordination: she gets on and off the table without difficulty but does guard her back to some degree. Grip: Slightly reduced on the right side to about 4/5. Radial, median and ulnar nerve functions are intact bilaterally. Finger-to-nose test is performed adequately. There are no tremors or involuntary movements. Romberg is negative. Fine manipulation was performed adequately. Gait is mildly antalgic on the left side. She is able to heel and toe walk with assistance for balance from the examiner. Tandem gait is performed adequately. She can bear weight on each leg. Strength is within normal limits, otherwise, in the left upper and both lower extremities. There is no muscle wasting. DTRs are 2+ and equal in both upper extremities, and 2+ and equal in both knees and both ankles. There is a mild sensory loss to light touch of the fingertips of the right hand as compared to the left.

(TR 274-75). Dr. Humphries diagnosed degenerative disc disease throughout the spine with residuals from prior carpel tunnel release procedures. Dr. Humphries opined that, based on the objective findings from his evaluation, Mrs. Davis could be expected to sit for six hours in an eight hour workday, stand and walk for six hours in a workday, and lift 25 pounds occasionally and 10 pounds frequently.

9

More generally, the court also believes that the objective evidence generated over the course of plaintiff's treatment does not support a finding of disabling musculoskeletal defect. Stated simply, the court agrees with the Law Judge's observation that "none of the x-ray, MRI or other imagery evidence provides objective support for an impairment that could reasonably produce the extent or intensity of the claimant's expression of subjective pain." (Supp. TR 44). Indeed, no doctor, including Dr. Dennis, cited clinical findings which are consistent with the existence of a physical problem which could be expected to produce totally disabling subjective discomfort. The court believes that it is not unfair to state that many of Dr. Dennis' findings appear to be based on plaintiff's subjective complaints rather than the notation of significant mechanical defects. In this context, the court notes that no physician has recommended surgical intervention, nor has Mrs. Davis sought a surgical solution for her problems. The court believes that Dr. Kendrick's opinion is consistent with the other medical evidence in the case. Thus, the court concludes that the Law Judge might reasonably give greater weight to Dr. Kendrick's physical findings than to those of Dr. Dennis. See Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005).

The Law Judge relied on the testimony of a vocational expert in determining whether Mrs. Davis retained sufficient functional capacity to perform specific sedentary work roles existing in significant number in the national economy. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (a vocational expert may assist the Law Judge in determining whether there is work available in the national economy which the particular claimant can perform). Bonnie Martindale testified at the administrative hearing as a vocational expert. Ms. Martindale reviewed plaintiff's prior work roles, and offered testimony as to the exertional requirements and skill levels involved in each job. Given

plaintiff's age, education, and prior work experience, and assuming the physical restrictions identified by Dr. Kendrick, Ms. Martindale testified that there are several sedentary work roles existing in significant number in the national economy which Mrs. Davis could be expected to perform. The vocational expert identified potential jobs as a charge account clerk, registration clerk, and order clerk. (Supp. TR 329-32). Ms. Martindale also testified that such office jobs would permit flexibility in terms of sitting and standing. (TR 332). It appears to the court that the vocational expert's testimony, and the assumptions under which the expert deliberated, are both reasonable and consistent with the evidence of record. The court finds substantial evidence to support the Law Judge's reliance on the vocational expert's testimony in assessing plaintiff's residual functional capacity for specific, alternate work roles.

While the arguments of the parties have focused on the conflict between the reports of Dr. Dennis and Dr. Kendrick, this case ultimately turns on the weight to be accorded to plaintiff's complaints and testimony concerning her severe, unrelenting, and disabling pain. The United States Court of Appeals for the Fourth Circuit has held that in order for pain to be found disabling, there must be objective medical evidence establishing the existence of some condition that could reasonably be expected to produce the pain alleged. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). In the instant case, the court again notes that no doctor has documented the existence of a physical condition which could be expected to produce subjective discomfort of the severity and persistence described by plaintiff. In such circumstances, the final decision of the Commissioner must be affirmed. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In conclusion, the court has found substantial evidence to support the Law Judge's determination that Mrs. Davis did not suffer from a severe impairment at any time during the period in which she still enjoyed insured status. Accordingly, the final decision of the Commissioner denying plaintiff's entitlement to a period of disability and disability insurance benefits must be affirmed. The court has also found substantial evidence to support the Law Judge's determination that plaintiff retained sufficient functional capacity for several specific sedentary work roles at all relevant times. It follows that the final decision denying entitlement to supplemental security income benefits must also be affirmed. Laws v. Celebrezze, supra.

An appropriate judgment and order in conformity will be entered this day. The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This __16th__ day of April, 2010.

_____
United States District Judge